UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **JAMES O. MOORE,**<br><br>Plaintiff,<br><br>vs.<br><br>**COMMISSIONER ANDREW M. SAUL,**<br><br>Defendant. | 2:19-CV-12753-TGB-PTM<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION (ECF NO. 25)** |

This matter is before the Court on Magistrate Judge Patricia T. Morris' report and recommendation of January 29, 2021, recommending that Plaintiff's motion for summary judgment be denied, that Defendant's motion for summary judgment be granted, and that the findings and conclusions of the Commissioner be affirmed. ECF No. 25.

The Court has reviewed Magistrate Judge Morris' report and recommendation, and Plaintiff's objections thereto. For the reasons set forth below, Plaintiff's objections are **OVERRULED**, and the report and recommendation is **ACCEPTED** and **ADOPTED** as the Court's findings of fact and conclusions of law. Consequently, the decision of the Commissioner denying Plaintiff's disability claim is **AFFIRMED**.

1

## I. BACKGROUND

The Court will highlight key points from Judge Morris' extensive summation of the long history of this case. R. & R., ECF No. 25, PageID.1849-75. Plaintiff seeks to establish that he was disabled for the period between November 17, 2007 and September 8, 2016, having already received a favorable determination for the time period after that to the present. He has had several unfavorable determinations of disability and appeals. An unfavorable determination issued on June 29, 2016, was appealed to the district court, which reversed the administrative law judge's decision ("ALJ") and remanded the case under sentence four of 42 U.S.C. § 405(g).

On remand, the district court's order (and subsequent remand from the Appeals Council) directed the ALJ to complete what it determined were two missing components of the disability analysis: (1) submitting the results of an MRI conducted in 2010 to medical scrutiny, and (2) re-evaluating Moore's credibility (now more properly called a "symptoms evaluation") also in light of the 2010 MRI results. The ALJ held a hearing on April 17, 2019. Moore was present at this hearing and testified. Dr. Ronald Kendrick, a medical expert, and Amelia Shelton, a vocational expert, also testified. ALJ Hr'g Decision, ECF No. 15-21, PageID.1409.

In a decision issued on May 24, 2019, the ALJ once again found Moore was not disabled in the time period in question. In considering the five-step analysis used to determine whether an individual has a

disability, *see* ECF No. 25, PageID.1851-52, the ALJ found that Moore's claim failed at step five. Specifically, she determined that he had a residual functional capacity ("RFC") for light work. ECF No. 15-21, PageID.1420. She also determined that, although he was unable to perform any past relevant work, there were jobs in significant numbers in the national economy that he could have performed, meaning he was not disabled in the time period in question. *Id.* at PageID.1438. The missing analysis ordered by the district court is reflected in the ALJ's discussion and eventual conclusion regarding Moore's RFC. *Id.* at PageID.1431-32.

Moore sought judicial review of this most recent decision on September 20, 2019. ECF No. 1. Parties timely filed cross motions for summary judgment, and these issues are now before the Court along with Judge Morris' report and recommendation.

## II.  STANDARD OF REVIEW

The law provides that either party may serve and file written objections "[w]ithin fourteen days after being served with a copy" of the report and recommendation. 28 U.S.C. § 636(b)(1). Plaintiff filed timely objections (ECF No. 26) to the report and recommendation; Defendant filed a response (ECF No. 27) to Plaintiff's objections. This Court must conduct a de novo review of the parts of a report and recommendation to which a party objects. *See* 28 U.S.C. § 636(b)(1). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or

3

recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

As for any parts of the report and recommendation that are reviewed de novo, the Court's judicial review is nevertheless circumscribed: the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."[1] *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is not a high standard, requiring "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Different kinds of evidence are generally given different weight. Evidence can come from an "acceptable medical source" or "other sources." 20 C.F.R. §§ 404.1513 (amended March 27, 2017), 416.913 (amended March 27, 2017). An opinion from a medical source who has examined the claimant is generally given more weight than one who has not, and in particular the opinion of someone who regularly treats the claimant (treating-source opinion) must be given "controlling weight" if "well-supported by medically acceptable clinical and laboratory

---

[1] The ALJ's decision stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 375 (6th Cir. 2013). Opinions from non-treating and non-examining sources are weighed based "the examining relationship (or lack thereof), specialization, consistency, and supportability." *Id.*

Finally, "an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts." *Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 508 (6th Cir. 2006) (quoting *Loral Defense Systems-Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir. 1999)).

### III. ANALYSIS

#### A. Findings regarding opinion evidence

Moore's first objection is that Judge Morris incorrectly evaluated the ALJ's consideration of three different doctors' medical source opinion evidence as related to the ALJ's subsequent determination that Moore had an RFC for light work. The Court will consider each.

#### i. Kendrick evidence

Moore alleges that the ALJ "misstated or ignored" medical expert Dr. Kendrick's testimony at the hearing, substituting her interpretation of the medical record for his, and that therefore Judge Morris erred in

5

finding this opinion evidence appropriately evaluated. Obj., ECF No. 26, PageID.1894-97.

As to the first claim, the Court does not find that Dr. Kendrick's testimony (Hr'g Tr. 4/17/19, ECF No. 16-2, PageID.1736-40) was misstated. The ALJ's decision provides a brief and accurate summary of Dr. Kendrick's responses to her questions during the hearing. ECF No. 15-21, PageID.1431. While she did not re-state the testimony in full or describe every topic that was covered, she was not required to do so, and the summary provided was adequate. *Kornecky*, 167 F. App'x at 508.

As to the second claim, Moore makes a number of allegations that Dr. Kendrick's testimony was "ignored." These allegations generally object to the way Dr. Kendrick's evidence was used, or not used, in the ALJ's final decision. But Dr. Kendrick was a non-treating, non-examining physician—of the different doctors' medical source opinion evidence available to the ALJ, it would be expected that Kendrick's would be given the least weight, and therefore the least specific mention. The ALJ was also not required to explain exactly how each part of Dr. Kendrick's testimony was or was not used in determining whether substantial evidence supported her final conclusions.

Specifically related to the reason for the remand, Moore lists several topic areas on which he believes the ALJ should have questioned Dr. Kendrick. ECF No. 26, PageID.1895. But the remand only instructed the ALJ to submit the results of the MRI to medical scrutiny, which she

6

did when she asked Dr. Kendrick the following: "And with respect to the MRIs that are contained in the file, what would be your conclusions?" ECF No. 16-2, PageID.1737. Any further inquiry was at the ALJ's discretion.

Lastly, Moore alleges that Dr. Kendrick's use of the words "moderate impairment" was improperly interpreted and applied by the ALJ in deciding that Moore was capable of light work, and that this is error in part because Dr. Kendrick was never specifically asked about how Moore's condition might translate into functional limitations. ECF No. 19, PageID.1767. It would certainly be error for the ALJ to have substituted her own "interpretation of the medical records for that of a physician who has examined the records." *Brown v. Comm'r of Soc. Sec.*, 602 Fed. Appx. 328, 331 (6th Cir. 2015). But Moore cannot cite to any part of the ALJ decision where this through-line between Dr. Kendrick's testimony and the eventual RFC determination of "light work" is so clear.

Having reviewed de novo the part of the report and recommendation that discusses the ALJ's treatment of Dr. Kendrick's evidence, the Court affirms Judge Morris' conclusion that there was no error.

### ii. Stewart evidence

Moore next alleges multiple errors related to the ALJ's treatment of Dr. Stewart's opinions. ECF No. 26, PageID.1897-1900.

7

Dr. Stewart first evaluated Moore in July 2010, reviewing x-rays and the 2010 MRI. Dr. Stewart had several follow-up visits with him through October 2011. ECF No. 15-21, PageID.1425-27. Her main conclusions were that Moore "would be unable to return to a job as a machinist. He would require a job that would allow him to change position frequently and he would be unlikely to tolerate a full 8 hours at work especially initially." ECF No. 15-16, PageID.1060. The ALJ gave great weight, little weight, and no weight, respectively, to these three opinions. ECF No. 15-21, PageID.1435-36.

Moore objects to the latter two conclusions and argues that all of Dr. Stewart's opinion should have been given great weight. ECF No. 26, PageID.1898. It is correct that a treating-source opinion is given controlling weight if it is well supported by clinical evidence and not inconsistent with other medical evidence in the record. *See Gayheart,* 710 F.3d at 375. But Judge Morris correctly points out that when the ALJ did not give Dr. Stewart controlling weight on the issue of positional limitations, it was because of an "inconsistency between her opinion and her treatment record" and because it was not supported by corresponding clinical findings. ECF No. 25, PageID.1883-84. Likewise, she was within her discretion to give no weight to the opinion regarding Moore's ability to complete a full workday because this is an issue reserved for the Commissioner to decide. 20 C.F.R. § 1520b(c)(3); *Cosma v. Comm'r of Soc. Sec.*, 652 F. App'x 310, 311 (6th Cir. 2016).

Moore argues that the ALJ again "played doctor" by seemingly rejecting Dr. Stewart's evaluation of the MRI in finding an RFC of light work. ECF No. 26, PageID.1898. But Moore again cannot identify any direct connection between Dr. Stewart's testimony regarding the MRI results and the ALJ's eventual RFC determination. Moore cites to other evidence in the record consistent with a finding of disability, and, to his mind, consistent with Dr. Stewart's evaluations, such that it was error for the ALJ to conclude as she did. But substantial evidence of an opposite conclusion cannot disturb an ALJ's finding if there is *also* substantial evidence in the record supporting the ALJ's decision. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).

Fundamentally, it is the ALJ's job to thoroughly weigh the presented evidence in reaching a conclusion, and the ALJ did so here by considering Dr. Stewart's opinion evidence as well as her treatment notes. ECF No. 15-21, PageID.1342, 1345-46. The Court does not find that the ALJ committed any legal error in this evaluation or that her eventual conclusions were unsupported by substantial evidence, and therefore affirms Judge Morris' conclusion on this issue.

### iii.  Lazzara evidence

Moore's final objection focusing on medical source opinion evidence relates to the ALJ's use of Dr. R. Scott Lazzara's opinion. ECF No. 26, PageID.1901-02.

9

The ALJ gave great weight to the treating-source opinion of Dr. Lazzara, who conducted a physical consultative exam in October 2014. The ALJ found Dr. Lazzara's opinion to be "consistent with his clinical observations as well as diagnostic imaging included in the record." ECF No. 15-21, PageID.1434. Judge Morris found that the ALJ appropriately weighed Dr. Lazzara's opinion in arriving at her eventual decision.

Moore's objection to this evidence centers on Dr. Lazzara's finding that Moore could "carry, push, and pull less than 20 pounds." ECF No. 15-21, PageID.1434. An RFC of light work requires that an individual be able to lift "up to" twenty pounds, and Moore argues it is error to translate the ability to move "less than" twenty pounds into an RFC requiring lift of "up to" twenty pounds without asking the vocational expert at the hearing specific questions about this differential. ECF No. 26, PageID.1901.

But the Court agrees with Judge Morris that, in this context, the difference between "up to 20 pounds" and "less than 20 pounds" has no practical significance. The vocational expert at the hearing was asked to provide information about "light exertion" jobs. ECF No. 16-2, PageID.1741. Plaintiff indicates that vocational experts understand light work to mean lifting "no more than" twenty pounds. ECF No. 26, PageID.1901. The information provided by the expert about "light exertion" jobs would therefore have been entirely consistent with Dr. Lazzara's finding and with the ALJ's eventual determination of an RFC

10

of light work. The Court finds no error in the consideration of Dr. Lazzara's findings and affirms Judge Morris' conclusion regarding this evidence.

**B. Finding regarding subjective symptoms**

Moore's second objection is that Judge Morris improperly affirmed some of the ALJ's conclusions about Moore's subjective description of his symptoms. Moore objects particularly to the ALJ's decisions to discount some of Moore's own descriptions of the amount of pain he was in and the extent of loss of function he was suffering from, arguing that these parts of her decision are not based on substantial evidence. ECF No. 26, PageID.1902.

First, Moore states that the MRI results were not appropriately addressed and that therefore any conclusions about Moore's description of his symptoms are not based on substantial evidence. *Id*. Again, it is correct that this case was remanded for another hearing in part to submit the results of the 2010 MRI to medical scrutiny. But the ALJ asked medical expert Dr. Kendrick about the MRI at the hearing and incorporated both Dr. Kendrick and Dr. Stewart's findings regarding the MRI into her eventual conclusion. Evaluation of the MRI is not a dispositive issue on which the presence or absence of "substantial evidence" depends—the remand instructed the ALJ to subject the MRI to scrutiny, but did not prescribe any particular weight that findings related to the MRI needed to have in the ALJ's final conclusions. The fact that

11

the MRI is not described as a more significant component of the analysis regarding Moore's RFC is not an indication that the RFC conclusion is not supported by substantial evidence.

Moore also objects to the ALJ's decision to discount his testimony that he spends most days in a recliner as being inconsistent with a lack of muscle atrophy, because no medical expert specifically suggested this connection. *Id.* at PageID.1903. But the ALJ did not discount his testimony solely on this basis: she also noted that treatment providers "typically observed normal muscle tone . . . and no evidence of atrophy" in determining that their observations "appear inconsistent with the claimant's reported frequency and severity of his symptoms and limitations." ECF No. 15-21, PageID.1432. This finding is therefore appropriately supported by substantial evidence.

He next claims that the ALJ erred in finding that his cervical fusion (a prior surgery of the C6/C7 vertebrae in 2003) remained stable because Dr. Stewart made a finding of adjacent segment disease. ECF No. 26, PageID.1903; *see* Stewart Report at ECF No. 15-16, PageID.1060. But the ALJ's specific finding was that "diagnostic imaging . . . shows that the claimant's prior cervical fusion remained stable." ECF No. 15-21, PageID.1342. The ALJ's conclusion focuses on whether there was an issue with the cervical fusion itself, and the specific portion of the spine involved in that procedure. It does not make any judgment related to

12

adjacent segment disease in another part of the spine. This finding is also appropriately supported by substantial evidence.

Lastly, Moore objects to the ALJ citing his conservative treatment plans as evidence that he had an RFC for light work, suggesting that his treatment plan was conservative only due to his inability to afford more intensive care. ECF No. 26, PageID.1903. But a history of conservative treatment can properly be considered by an ALJ when evaluating the subjective statements made by a claimant about their pain and deciding how to credit them. *Ward v. Comm'r of Soc. Sec.*, No. 18-12477, 2019 WL 4891478, at *7 (E.D. Mich. Aug. 13, 2019), *rep. and rec. adopted*, 2019 WL 4386070 (E.D. Mich. Sept. 13, 2019). And the record is clear that the ALJ knew Moore was not always covered by health insurance, and that she "considered the loss of benefits as a factor in the evidence of limited medical treatment." ECF No. 15-21, PageID.1432. Her findings that his subjective descriptions of his pain were inconsistent with his generally conservative treatment regimens and that the conservative treatment was not solely due to his inability to pay are still supported by substantial evidence in the record—for example, when he regained insurance in 2011, Dr. Stewart's only recommendation was for him to return to physical therapy, rather than surgery or any more intensive treatment. ECF no. 15-16, PageID.1060. This finding and the decision of the ALJ to not fully credit Moore's subjective descriptions in determining his RFC are therefore appropriately supported.

## CONCLUSION

The Court acknowledges that these proceedings have gone on for some time and that, in Mr. Moore's words at his 2019 hearing, they have been "overwhelming." However, the Court must make its decisions based on the law in this area and the record of the proceedings. After careful review, Plaintiff's objections do not warrant disturbing Magistrate Judge Morris' recommendation.

As such, the Court hereby **ACCEPTS AND ADOPTS** Magistrate Judge Morris' report and recommendation (ECF No. 25) as this Court's findings of fact and conclusions of law. Plaintiff's motion for summary judgment (ECF No. 19) is **DENIED**, Defendant's motion for summary judgment (ECF No. 21) is **GRANTED**, and the findings and conclusions of the Commissioner are **AFFIRMED**.

DATED this 31st day of March, 2021.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge